318-072 Joseph Blewitt v. Leonard v. Cecilia Urban Joseph Blewitt v. Leonard Petitioner's 137 Motions for Sanctions by Judge Anderson, as well as an appeal of the grant of summary judgment for the plaintiff by Judge Anderson. As a cross-appeal. As a cross-appeal, correct. I guess I want to real quick respond to Mr. Blewitt's comments about Judge Petrangiero as well as Judge Anderson's that the petitions are similar. I think anybody would say petitions under Rule 137 are similar, and I think that's maybe all he was doing, and maybe that's why he was looking at a 137 petition Mr. Blewitt filed in another case. And by the way, do realize that these are related cases. This whole litigation that's going on, we've got another appeal that's coming before you, and I've moved to consolidate that. It's again a denial of 137 by Judge Petrangiero. You've moved to consolidate it with what? With this appeal. I moved to consolidate that appeal with this appeal. That was denied. And it was denied. And I'm going to ask you again to consider it, because literally these cases. You're not asking here for us to consider it, are you? Well, I don't see any reason to have oral arguments again, but I'll do that later. But my point is this all stems from 2003 when Mr. Urban and Mrs. Urban hired Mr. Blewitt to present and pursue a claim for them for personal injury. Mr. Urban was the only one that was injured. He was hit by somebody. He was the only one that was injured, and the judgment actually was just in his favor. But because the caption was the two of them as plaintiffs, and then the two of them both hired new counsel after the case was dismissed. And soon Mr. Blewitt got a judgment for legal malpractice against him. And that was the subject of some litigation into the appellate court and everything about who got the award. It was Mr. Urban alone that got the award. And then there was a question of what was the effect of data. It was in Cook County, correct? Yes. Originally that started in Cook County. And once that judgment was rendered, it was $238,007.01. We filed a petition in Will County to enroll the judgment and to then record a memorandum of judgment so we could collect against Mr. Blewitt because he lived in Will County. The litigation that he was dismissed, that he was accused of malpractice in, was a Cook County case. Judge, we've even been to the federal district court in this litigation with Mr. Blewitt. I can only take so much. I can only take so much, too. I think we're all familiar with the procedural history of this case. I wouldn't use my time on it. Okay, then I won't. I think the motions for sanctions that were decided by Judge Anderson were well decided. I think he gave Mr. Blewitt ample opportunity, even when he violated the rules by filing motions that were in excess of 15 pages, and as Judge Anderson said, by five times the limit, 79 pages instead of 15 pages. He did that twice. Judge Anderson was very patient. Judge Anderson dismissed his first petition to quiet title. He dismissed his second petition to quiet title. He filed a third petition to quiet title. Judge Anderson spent a lot of time on that and on the motions for sanctions, and as a consequence, we were in court frequently in front of Judge Anderson, we meaning myself and Mr. Blewitt, and I think Judge Anderson is well prepared to decide a petition for sanctions when a case has been for such a length of time and had so much pleading, so many court hearings, and so much argument that he ended up deciding the quiet title against me, but he invited me to take an appeal because he's asking the court for some instruction on that. He says at page 22 of my book... So what are you really arguing here? Because we've got two things going on here. I'm arguing on one, the sanctions... You've got a cross appeal, right? Right. The sanctions should be... ...to his motion for sanctions appeal. And I did. I think Judge Anderson has considered this litigation for three years. The fact that he looked at Judge Petrangero's case, which is really the same case, but it's the enforcement of the judgment case, so there's a lot of overlap. The pleadings all refer to all the procedural history in both cases. It probably makes a lot of sense for a court to look at it. Just like you probably looked at the court, the case history in all of these pleadings starting from 2004. But I think Judge Anderson's decisions are well thought out, well decided, and supported by his understanding of the case that was filed, the action that was taken by everybody, and his decision, even in favor of Mr. Blewett, he fully understands the events that happened in front of him, and he found no sanctionable conduct. But he did so before the hearing took place. Now, let me give you a hypothetical. If he had ruled against you and imposed sanctions without a hearing, what would your argument be here today? That's okay because he knew the record and was familiar with the relationships of the parties? Sure. I would have judged, because actually Judge Anderson cites cases that we argued that suggest that he doesn't have to have a hearing. And Mr. Blewett has had ample hearings and ample opportunity to bring his motions and ample opportunity to present allegations that he thinks are violations of 137. I appreciate your answer. I would add that he would have to state reasons for his finding sanctionable conduct. He couldn't do it without a hearing and have no reasons. But if he stated reasons, we could appeal that decision and we wouldn't be entitled to a hearing. And there's plenty of case law that suggests on 137 you don't need to have a hearing. By the way, Mr. Blewett has... You're asking me not to flip and flop back and forth cases, but you asked him a question. He has actually filed a motion to substitute Judge Pedregaro and allege that she's president against him because she's been impatient with him. And I'm going to tell you, I've been there every time she's heard this case and she's been the most patient person in the world in dealing with Mr. Blewett. Well, how does that affect the case before us? Well, you asked... Somebody asked the question... I didn't ask you. Somebody asked the question that... If it went back to Judge Pedregaro, what would you do? He's already filed a motion for substitution. So now we're talking about that aspect of this. Right. Oh, okay. I want to keep all these dots together somehow. Let's focus... The dots together, I think 137, clearly there was no conduct that was actionable. The record is lengthy. There's a large volume of documents that Mr. Blewett files. So you... I tried to get... I think the gist of his argument is that somehow he was influenced by an ex parte communication in the form of a case filing of a motion for sanctions in another case that was not before this particular judge. And you're saying that... Regardless of that, Judge, he listened to this case. He heard this case. He saw me appear in court in front of him, I don't know how many times, along with Mr. Blewett. He found no actionable conduct in this case. Sanctionable 137 conduct. Regardless of what Judge Anderson did, he's not sanctioning himself. Maybe... Maybe Mr. Blewett's suggesting somebody should sanction Judge Anderson, but I don't agree with that. I think Judge Anderson is one of the kindest and very considerate judges. We're not here as an honorarium. We are, Judge, but he heard this case for three years and has ruled that there was no sanctionable 137 conduct on our side. So it would be hard to believe that he would be influenced by conduct or pleadings outside of the case that he's responsible for. Absolutely. Can you touch base on whether the motion for summary judgment was proper? Because your time is very limited and we haven't heard anything about that. Well, and I'm suggesting that the difference in the memorandum of judgment that was filed was a 60 cents typographical error. Instead of saying $238,007.01, it said 6.01. So the zero was typed incorrectly as a six. That's the only error in the notice that Mr. Blewett got on the memorandum. Which memorandum are you talking about, 2004 or 2006? Judge, it was the 2006 memorandum that had the error, not 2004. You mentioned earlier the litigation in Cook County. Didn't the court in Cook County set aside the 2010 revival order and the 2017 revival order and then denied your request to revive again? And the reason I ask that question is because if the judgment in 2003 was not properly revived, what does it matter whether the memorandums from 2004 and 2006 had errors, Scrivener errors? Well, that's maybe one of the reasons why my clients decided not to appeal based on what we discussed. But Judge Anderson thinks that to reverse a memorandum, to vacate a memorandum of judgment, to disregard a memorandum of judgment, and we did discuss notice in that hearing. We did discuss notice in our pleadings, which Mr. Blewett doesn't seem to think we did. But he's been on notice. He was on notice from the day he got a default judgment entered against him. He tried to vacate the default judgment. He was on notice of the amount of the judgment when he did an appeal in Cook County. He was on notice in wage garnishments and everything. Well, the fact that he knows that there's a judgment, it's good, but you still can't collect beyond seven years unless you revive that judgment. Well, I don't agree with you, Judge. First of all, garnishment will last until 27 years, actually. The method of collection was a lien on real estate. Right. And why maybe the petition to acquire a title is important is because the title to the house, if their marital residence was in joint tenancy before, then they converted it to tenancy by the entirety  So there may be some actual... Well, you're talking about a judgment that has been a lien on real property, right? Right. And the whole idea of reviving it is it doesn't extinguish the judgment. I understand that. But it does extinguish it doesn't if it's not properly revived against that particular identified piece of property you can file against. Sure, Judge. It can be revived again, though. It can be revived at any time within 20 years. So you're saying there's no preclusive effect of the circuit court? None. And certainly, because he transferred title during the time when that judgment was revived and the revival was still valid, that may be a fraudulent transfer. But we aren't there, Judge. We're talking about simply we appealed this and we decided not to, but Judge Anderson invited us to and when Mr. Blewett filed his 137, we filed the cross-appeal because we were invited to. And I would suggest that there's some disparity in the decisions and Judge Anderson struggled with that decision. He followed the law in deciding that even a 60-cent error in the $238,000 judgment was enough to say, well, I'm going to apply title. He asked you all to give him some instruction on that. Well, the case already is. We have a case on this district that's instructed and he's ruled on it. He followed the law of our decisional lawyer. Is it a revisiting issue? I don't think it is, Judge, but he invited it. He maybe thinks it is. But what was the holding in our case here, prior case that he correctly followed? It was a different error than this error. This is a 60-cent error and there was no... And we interpreted the statute. We interpreted the statute as strict compliance, didn't we? Yes, you did. And what did we say? It should be strictly compliant. And that's... And that's the ruling that he... Applied. Yes, but he thinks that there's other jurisdictions that don't say that. And he's... He invited us to take the appeal. I've done that since we were here anyhow. So you're getting an opportunity to say... I mean, this is less than a 1-percent error in the judgment of the reporting of the memorandum. And the judgment is... I mean, Mr. Blewett has never claimed he didn't know the judgment. He's avoid answering that question. It's not... The statute doesn't go to just Mr. Blewett. The statute says notice to the world, basically, doesn't it? It does. So... So that's what has to be considered, is that meaning correct in notice to the world? Well, there are several memorandums filed, and several of them have been correct. And the one is incorrect. By 60 cents. By 60 cents on the $238,000 judgment. I think that's just what Judge Anderson invited us to argue before you. Two minutes, please. Okay. Why are you appealing this? Are you telling me you didn't... Your clients don't want to appeal this, but you're just doing it for Judge Anderson? No, Judge. What happened is when the motion for summary judgment was granted for Mr. Blewett, I met with my clients and discussed with him about taking an appeal. And they decided not to take an original appeal. Then Mr. Blewett came up with his 137 sanctions, and they were denied, and Mr. Blewett appealed. And so we filed a cross appeal because we're already spending the time and the money and the energy of coming here. And because Judge Anderson invited me to, I agreed with him that I think a 60-cent error when Mr. Blewett has notice. And by the way, the value of the house may not be in excess of the judgment. I don't know that, but... So notice to the whole world. Everybody would know there's a judgment. Anybody that would look would find that it was a 60-cent error. They wouldn't... They wouldn't ever have trouble finding this judgment against Mr. Blewett. So anyway... You had... You always kid for tact. Well, we're here. We thought we'd take the opportunity to see if you think that, you know, 60-cent error is, in fact... Is big enough to do something. Is... I mean, it's a... We argue in our motions scrivener's error, and we repeat that frequently, and those are often allowed to be corrected. And we've cited a bunch of cases, including third-district cases. I don't know if there are any of yours. There are older cases. And from every district, you can correct scrivener's errors. And that's clearly what this was. It's not like we converted 237,000 to 237 million. We just took a number that looked like a zero and typed it a zero, but it was actually a six. I mean, we fought with whether or not Irvin was awarded any money in the judgment. And it was clear it was corrected and non-protonc, and then it was... The appellate court said, Oh, you can't do that non-protonc. But she wasn't ever awarded any money. But her name is still on the caption. And so we file the caption when we enroll it in Wilco. We have to do the same caption. You can't do something different. So her name is still in the caption, but never do we ask for any money on her behalf. It's always on behalf of Mr. Irvin. But Mr. Blewett raises that as an issue. Well, Mrs. Irvin's a party, and she didn't get a judgment. She's not. She's just in the caption. And to the extent that he's even made claims against her on 137 is ridiculous, really, because it's not her judgment. It's just Mr. Irvin's judgment. He was the only one injured. And I don't remember, because I didn't handle that part of litigation, but she may have alleged some loss of consortium or some other claim that she brought, but the judge entered no finding for her, originally just for Mr. Irvin, and then later corrected it and said, I'm finding zero for her. But we've litigated that for years. So she's got zero. Thank you. Thank you, Counselor. Counselor. You may proceed. So first I'd like to speak on a couple of false statements that Mr. Brueggemann made. He said that the Irvins hired new counsel after their case that I was representing them for was dismissed. It's clear in my brief. I've explained it. The record shows it, that I was representing the Irvins for an injury that Mr. Irvin sustained in a garage facility, his wife for loss of consortium. Their case was dismissed. I refiled the case within the statute of limitations. After refiling the case, but before issuing summonses, I received a letter from both the Irvins and his new counsel, Mitchell and Allen, discharging me as his attorney. So I was no longer the Irvins' attorney about, I think, maybe six weeks into representing him after the refiling, and his case was ultimately DWP'd, and no summonses had ever been issued by his new counsel, Mitchell and Allen. So the statement that Mr. Brueggemann made that the Irvins hired new counsel after his case was dismissed, I guess you could say it's misleading because, yes, it was dismissed, but it was refiled, and it was a valid pending case at the time that I was representing them when I was then discharged and the Irvins hired Mitchell and Allen.  I'm curious about your take on that. Yes, Scrivener's error. It's not a Scrivener's error. He does often claim that it is, but as I mentioned in my brief, it's not a Scrivener's error if he chooses that amount. So in one of the pleadings, I had said as a pleading that the judgment amount was $238,007.61. He filed an answer to that statement saying, denied. The judgment amount is actually unclear. It could be for $238,007.61. It could be 0-1. It could be... And there was a mathematical error in the judge's original judgment, so he picks four figures, and the mathematical error resulted in a $30,000 difference. So he says it could have been this number, could have been that number, could have been $30,000 more than this number or $30,000 more than that number. So he realizes or he thinks that there's the possibility of four possible judgment numbers here he can choose from. He chose one that was wrong. The appellate court in 2005 clearly stated the judgment, despite the mathematical error, clearly was for Leonard Urban only in the amount of $238,007.61. He chose $238,007.01, which was one of the four choices he thought he could make based upon his reading of all the possibilities. All he had to do was look at the appellate court opinion and say, well, they're the ones that said it's $007.61. That's the one I need to put down on these memorandums of judgment. He put down a different one. So it's not a Scrivener's error. A Scrivener's error is like a clerical error. You press the wrong button on the key and it shows up as something you weren't expecting. He chose that number, so it's definitely not a Scrivener's error. And another point about that is that a Scrivener's error is not sufficient to render a memorandum of judgment that requires strict compliance to be valid. The cases are... Well, the main case that I rely on is the Manievs case, and the judgment date was listed as being off by one day. One number, one keystroke, and the court said that is an invalid memorandum of judgment. And so for two reasons. Number one, that he hit the... Well, I don't say he hit the wrong key. I say he chose the wrong number, but he's got the wrong number. So based on Manievs, it's the wrong number, wrong judgment amount, and therefore it doesn't strictly comply with the statute. And number two, it's not even a Scrivener's error because he specifically chose that number. Wasn't it? Um... So I have not filed a petition to substitute Judge Petrengar. That was a false statement by Mr. Brueggemann. I did file a motion to substitute from Judge Barrett, and it got to Judge Petrengar because of something Judge Barrett said. I had filed a motion to dismiss the citation to discover assets, and Judge Petrengar, it was a 12-page motion. I handed it up to him and handed it to Mr. Brueggemann in court, and Judge Barrett said he doesn't need to respond to that. I mean, that telegraph... Well, does this go to any of the issues in the case? No, no. Let's focus on that. Okay. So that's all I really want to say about what Mr. Brueggemann said. I claim in my brief in response to his appeal that his entire appeal is moot because the arguments that he's making here today and that he made in his cross-appellate brief, he didn't make either in the trial court. He didn't make in the trial court, and he didn't make on a motion to reconsider, or he brought up one new thing in a motion to reconsider that wasn't brought up in court. So I do believe that his cross-appeal should be either ruled on substantively, then denied, or that the court should declare that it's moot because none of those things he brought up, all these arguments that he's making, he had the opportunity in the trial court to bring those up, and he never did. And then just getting back quickly to my point, so I wanted to read this one quote that I do cite in my brief. I think it's from the case of People v. Mazzarella on the question of judge disqualification. It says, The alleged bias or prejudice of a trial judge to be disqualifying must be shown to have stemmed from an extrajudicial source and resulted in opinion on the merits on some basis other than what the judge learned from his participation in the case. And an extrajudicial source, even though it's within the same court, it's information that the judge is learning from a source other than what he's learning from the parties appearing in front of him. So clearly looking at the order in the other case is an extrajudicial source, and the judge relied on that and put it in his opinion in ruling against me on the motions for sanctions. Thank you, Your Honor. Thank you, counsel. Thank you for your arguments, and we'll take this matter under advisement and render a decision. Thank you. Now we'll take a break for talent.